Kenerson, Admx. v. Morgan Guar. Trust CV-91-611-SD  01/25/96
UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Jean R. Kenerson, Administratrix
 of the Estate of Vaughan H. Kenerson



        v.                                    Civil No. 91-611-SD

Morgan Guaranty Trust Company;
Bank of California, N.A.



                         O R D E R


     This order addresses the issues raised by various pending

motions in limine as well as a motion for partial summary

judgment as to the Bank's "commercial reasonableness."


1.  Plaintiff's Motion in Limine re Carl Wikstrom, document 83

     This motion seeks to preclude defendants' proposed witness

Carl Wikstrom from testifying as an expert pursuant to Rule 702,

Fed. R. Evid.  Plaintiff thus seeks to limit Mr. Wikstrom's

testimony solely to that of a fact witness concerning the facts

and circumstances relating to Morgan Guaranty's check

verification procedure.  Defendants' counter that plaintiff's

argument is more precisely addressed to the weight, rather than the admissibility of any such testimony.

"Determinations of whether a witness is sufficiently qualified to testify as an expert on a given subject and whether such expert testimony would be helpful to the trier of fact are committed to the sound discretion of the trial court." Espeaignnette v. Gene Tierney Co., 43 F.3d 1, 10-11 (1st Cir. 1994) (citing Navarro de Cosme v. Hospital Pavia, 922 F.2d 926, 931 (1st Cir. 1991)). The trial judge's ruling "'in this sphere [will] be upheld "unless manifestly erroneous."'" Id. at 11 (quoting United States v. Sepulveda, 15 F.3d 1161, 1183 (1st Cir. 1993) (quoting Salem v. United States Lines Co., 370 U.S. 31, 35 (1962)), cert. denied, ___ U.S. ___, 114 S. Ct. 2714 (1994).

"Rule 702 consists of three distinct but related requirements,"[1] United States v. Shay, 57 F.3d 126, 132 (1st Cir. 1995), which are intended to guide the trial judge in ensuring "'that an expert's testimony both rests on a reliable foundation

---

[1]"[A] proposed expert witness must be qualified to testify as an expert by 'knowledge, skill, experience, training, or education[,]' . . . the expert's testimony must concern 'scientific' technical or other specialized knowledge[,]' . . . [and] the testimony must 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" Shay, supra, 57 F.3d at 132 (quoting Rule 702, Fed. R. Evid.) (other citations omitted).

and is relevant to the task at hand,'" <u>Vadala v. Teledyne Indus.,</u> <u>Inc.</u>, 44 F.3d 36, 39 (1st Cir. 1995) (quoting <u>Daubert v. Merrell</u> <u>Dow Pharmaceuticals, Inc.</u>, ___ U.S. ___, ___, 113 S. Ct. 2786, 2799 (1993)). In order to properly effectuate the

> "gatekeeping function" contemplated by Rule
> 702[,] . . . the trial judge [is essentially
> required] to assess whether it is "*reasonably*
> *likely* that the expert possesses specialized
> knowledge which will assist the trier better
> to understand a fact in issue." <u>Sepulveda</u>,
> [<u>supra</u>], 15 F.3d at 1183 (citing <u>Daubert</u>,
> [<u>supra</u>], ___ U.S. ___, 113 S. Ct. 2786)
> (emphasis added); <u>Apostol v. United States</u>,
> 838 F.2d 595, 599 (1st Cir. 1988) (noting
> that Rule 702 rulings invite a "case-specific
> inquiry").

<u>United States v. Alzanki</u>, 54 F.3d 994, 1005-06 (1st Cir.), <u>petition for cert. filed</u>, 64 U.S.L.W. 3298 (U.S. Oct. 16, 1995) (No. 95-619).

> The fundamental question that a court must
> answer in determining whether a proposed
> expert's testimony will assist the trier of
> fact is "'[w]hether the untrained layman
> would be qualified to determine intelligently
> and to the best degree, the particular issue
> without enlightenment from those having a
> specialized understanding of the subject
> matter involved.'"

<u>Shay</u>, <u>supra</u>, 57 F.3d at 132 (quoting <u>United States v. Montas</u>, 41 F.3d 775, 783 (1st Cir. 1994) (quoting Rule 702, Fed. R. Evid., advisory committee's notes), <u>cert. denied</u>, ___ U.S. ___, 115 S. Ct. 1986 (1995))) (other citations omitted). "Unless the

3

witness's opinions are informed by expertise, they are no more helpful than the opinions of a lay witness . . . [and thus] cannot be admitted pursuant to Rule 702 and instead must comply with the requirements of Fed. R. Evid. 701 governing the admissibility of opinion testimony by lay witnesses." Id. at 133 (citing United States v. Jackman, 48 F.3d 1, 4-5 (1st Cir. 1995)).

The Federal Rules of Evidence contemplate that a qualified expert must be allowed to testify with "'the full burden of exploration of the facts and assumptions underlying [his testimony placed] squarely on the shoulders of opposing counsel's cross-examination.'" Newell v. Puerto Rico, Ltd. v. Rubbermaid, Inc., 20 F.3d 15, 20 (1st Cir. 1994) (quoting International Adhesive Coating Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 544-45 (1st Cir. 1988)). "'[T]he fact that an expert's testimony may be tentative or even speculative does not mean that the testimony must be excluded so long as opposing counsel has an opportunity to attack the expert's credibility.'" Id. at 21 (quoting International Adhesive Coating Co., supra, 851 F.2d at 544) (citations omitted in Newell).

If upon presentation of direct and cross examination of Mr. Wikstrom it appears that "the opinions advanced . . . rest on a

4

wholly inadequate foundation, the judge, on timely motion, may strike the testimony."  Sepulveda, supra, 15 F.3d at 1183 (citations omitted).  However, "'[w]hen the factual underpinning of an expert opinion is weak, it is a matter affecting the weight and credibility of the testimony--a question to be resolved by the jury.'"  Newell, supra, 20 F.3d at 21 (quoting International Adhesive Coating Co., supra, 851 F.2d at 544).

The court has reviewed plaintiff's evidence in support of her motion in limine and finds such to address the weight and/or credibility of defendants' proposed expert testimony rather than the admissibility of same *qua* expert opinion.  Accordingly, the motion in limine (document 83) is herewith denied.


2.  Motion in Limine on Plaintiff's Post-Conversion Activities, document 84

5

Invoking the provisions of Rules 401[2] and 403,[3] Fed. R. Evid., plaintiff moves in limine to bar the introduction of any evidence concerning her alleged negligence subsequent to October 12, 1984, the date the last converted check was drawn.

Under Rule 401, Fed. R. Evid., the "consequential facts" in this litigation, as pertaining to the statutory contributory negligence defense provided by New Hampshire Revised Statutes Annotated (RSA) 382-A:3-406,[4] are those concerning (1) the

---

[2]Rule 401, Fed. R. Evid., provides:  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[3]Rule 403, Fed. R. Evid., provides:  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[4]Prior to its revision in 1993, which version controls for the purposes of this litigation, RSA 382-A:3-406 provided:

> Any person who by his negligence
> substantially contributes to a material
> alteration of the instrument or to the making
> of an unauthorized signature is precluded
> from asserting the alteration or lack of
> authority . . . against a drawee or other
> payee who pays the instrument in good faith
> and in accordance with the reasonable
> commercial standards of the drawee's or
> payor's business.

negligence, if any, of the plaintiff and (2) if negligence on plaintiff's part is proven, that such negligence substantially contributed to the making of the unauthorized signature; i.e., the forgery.  See American Title Ins. Co. v. Shawmut Bank, 812 F. Supp. 301, 305 (D.R.I. 1993).

Mrs. Kenerson's actions after the last check was converted are not such "consequential facts," and, accordingly, the motion in limine (document 84) is herewith granted.  Defendants are barred from attempting to introduce any evidence concerning Mrs. Kenerson's actions subsequent to October 12, 1984, as part of their RSA 382-A:3-406 negligence defense.

3.  Motion to Continue Trial, document 77

Counsel for the defendants move the court to continue the trial in this matter, scheduled to commence February 6, 1996, citing a conflict with state court trial dates previously noticed.  Documents 77, 92.  This matter was raised at the final pretrial conference and resolved as follows: Jury selection will take place as scheduled on February 6, with actual trial to commence on Monday, February 12, 1996, all counsel believing that their calendars will be cleared for commencement of trial on that date.

Accordingly, the motion to continue trial, document 77, and the supplemental motion to continue trial, document 92, are each herewith denied.

## 4. Joint Motions to Excuse Parties from Attending Pretrial Conference, documents 93, 97

Indicating that both parties shall be available by telephone, counsel for the respective parties move to excuse their attendance otherwise required pursuant to Local Rule 16.3(b). Said motions are each herewith granted.

## 5. Plaintiff's Motion for Partial Summary Judgment as to "Commercial Reasonableness", document 78

In a final effort to preclude defendants from raising the RSA 382-A:3-406 contributory negligence defense, plaintiff moves the court for entry of partial summary judgment on the issue of the Banks' "commercial reasonableness".

### a. Summary Judgment Standard

Summary judgment shall be ordered when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

8

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  Thus, "'summary judgment's role is to pierce the boilerplate of the proceedings and assay the parties' proof in order to determine whether trial is actually required.'" McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, ___ U.S. ___, 113 S. Ct. 1845 (1993)).

A district court, in assessing the summary judgment record, must "interpret the record in the light most hospitable to the nonmoving party, reconciling all competing inferences in that party's favor."  Id. (citing Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993)).  "[W]hen the motion targets an issue on which the nonmoving party bears the ultimate burden of proof . . . the nonmovant must 'produce specific facts, in suitable evidentiary form; in order to demonstrate the presence of a trialworthy issue and thereby deflect the sharp blade of the summary judgment axe." Id. (quoting Morris v. Government Dev. Bank, 27 F.3d 746, 748 (1st Cir. 1994)).

b. Defendants' "Commercial Reasonableness"

As noted by the court in its order of October 17, 1995,

>"Proof of the plaintiff customer's negligence is not sufficient to establish a successful estoppel under U.C.C. § 3-406. The defendant bank seeking refuge in § 3-406 must also establish that it was not contributorily negligent, i.e., that it exercised "reasonable commercial standards" in verifying signatures on the checks presented to it for payment."

Order at 7 (quoting Zambia Nat'l Commercial Bank Ltd. v. Fidelity Int'l Bank, 855 F. Supp. 1377, 1387-88 (S.D.N.Y. 1994)) (other citation omitted). In the course of said order, the court further noted that "'the question of whether a bank acted with commercial reasonableness is ordinarily a question of fact,'" id. at 8 (quoting American Title, supra, 812 F. Supp. at 307), best reserved for determination by a jury," id. at 9.

Despite plaintiff's renewed efforts to obtain a ruling on the Banks' liability, and thus proceed to trial solely on the measure of damages, her motion fails to persuade the court that the issue of commercial reasonableness should herein be decided as a matter of law. The principal cases marshaled by plaintiff in aid of her argument, True v. Fleet Bank-NH, 138 N.H. 679, 645 A.2d 671 (1994), and Lund v. Chemical Bank, 797 F. Supp. 259 (S.D.N.Y. 1992), were decided by the court upon submission of stipulated facts and/or following a bench trial. A third case, American Title, supra, 812 F. Supp. at 301, while also decided

10

subsequent to a bench trial, found the actions of the bank therein commercially unreasonable in light of the size of the checks at issue therein. This court declines, on motion for summary judgment, to engage in any manner of line-drawing over check value and attendant enhancements to the Banks' existing burden to prove commercial reasonableness on their part.

Accordingly, plaintiff's motion for summary judgment (document 78) must be and herewith is denied.

## 6. Defendants' Motion in Limine Regarding Damages, document 89

Defendants move in limine to have any damages plaintiff may ultimately be awarded at trial reduced by (1) payments she received from Judge Fairbanks between January 1982 and May 1988, a sum approximated at $66,000, and (2) the funds awarded in settlement of her claim against Judge Fairbanks's bankruptcy estate, approximated to slightly exceed $145,000.

Defendants' argument, though forcefully made, fails to distinguish the holding in True, supra, and thus proves illusory. On this particular issue, the New Hampshire Supreme Court began by noting that "RSA 382-A:1-103 (1961) does permit the consideration of common law principles of law and equity unless

11

they are 'displaced by the particular provisions of [the Uniform Com

mercial Code].'" True, supra, 138 N.H. at 681, 645 A.2d at 672. However, in True, as is the situation here, the "defendant's liability for conversion . . . [is] governed by former RSA 382-A:3-419(2), which clearly distinguishes the measure of liability of drawee converters from that of non-drawee converters, leaving the availability of common law defenses open only to non-drawee converters." Id. The court thus concluded that "any common law defenses that might have been available to the defendant were displaced by the strict liability standard set forth in former RSA 382-A:3-419(2)." Id.[5]

Accordingly, defendants' motion in limine regarding damage evidence (document 89) is herewith denied.[6]

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

_____

[5]As plaintiff correctly indicates, the very same common law defenses sought by the defendants herein--set-off, double recovery, unjust enrichment--were rejected by the Court in True. See Supreme Court Brief for Fleet Bank-NH at 19 (attached as Exhibit C to Plaintiff's Objection).

[6]In view of said ruling, the court herewith grants plaintiff's objection to Defendants' Proposed Exhibit E, the record of proceedings in Estate of John C. Fairbanks, before the bankruptcy court. No such evidence contained therein relates to any "consequential facts" of the issues to be heard at trial.

January 25, 1996
cc:  Bradford W. Kuster, Esq.
     John T. Broderick, Jr., Esq.